**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

IQBAL SINGH-SIDHU,

    Defendant.

3:13-cv-00032-RCJ-VPC-1

**ORDER**

**I.   FACTS AND PROCEDURAL HISTORY**

A jury convicted Defendant Iqbal Singh-Sidhu of seventeen drug-related offenses, i.e., for possessing and distributing controlled substances and controlled substance analogues and maintaining a drug-related premises. The Court of Appeals affirmed Defendant's convictions and sentences. Defendant has filed a habeas corpus motion under 28 U.S.C. § 2255 based on his trial counsel's alleged ineffective assistance.

**II.   LEGAL STANDARDS**

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). The motion is timely, as the mandate of the Court of Appeals as to Defendant's appeal of the Judgment issued less than one year before Defendant filed the present motion. *See id.* at § 2255(f)(1).

Substantive legal arguments not raised on direct appeal are said to be "procedurally defaulted" and cannot be raised later in a collateral attack. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). There are exceptions to the procedural default rule when a defendant can show (1) cause and prejudice, or (2) actual innocence. *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) (citing *Bousley v. United States*, 523 U.S. 613, 622 (1998)).

"Cause" means "some objective factor external to the defense" that impeded the defendant's efforts to comply with the procedural requirement. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991). Among the reasons that can constitute "cause" are government coercion, *see United States v. Wright*, 43 F.3d 491, 497–99 (10th Cir. 1994), ineffective assistance of counsel, *see McCleskey v. Zant*, 499 U.S. 467, 494 (1991), and a "reasonable unavailability of the factual or legal basis for the claim." *See id.*

Ineffective assistance of counsel is "cause" excusing procedural default only where the failure rises to the level of a constitutional violation under *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Skurdal*, 341 F.3d 921, 925–27 (9th Cir. 2003). Ineffective assistance of counsel claims meeting the *Strickland* test are not procedurally defaulted, and such claims can be brought for the first time under § 2255 even if they could also have been brought on direct appeal. *Massaro*, 538 U.S. at 504. Ineffective assistance of counsel claims under § 2255 are essentially a special variety of "cause and prejudice" claim. The prejudice required is the same, but the cause is based specifically on constitutionally deficient counsel rather than some other miscellaneous "objective factor external to the defense." *McCleskey*, 499 U.S. at 493.

The Sixth Amendment right to effective assistance of counsel is violated when: (1) counsel's performance was so deficient so as not to constitute the "counsel" guaranteed by the Sixth Amendment; and (2) the deficiency prejudiced the defense by "depriv[ing] the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. There is a "strong presumption" of reasonable professional conduct. *Id.* at 698. When this presumption is overcome and an attorney's "unprofessional errors" are such that there is a "reasonable probability" the result would have been different had the errors not occurred, the defendant has been deprived of his Sixth Amendment rights. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). "Reasonable probability" is a lower standard than "more likely than not." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). The analysis does not focus purely on outcome. *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). The error must also have rendered the trial fundamentally unfair or unreliable. *Williams v. Taylor*, 529 U.S. 362, 391–92 (2000). Counsel's tactical decisions with which a defendant disagrees do not rise to the level of ineffective assistance unless the decisions are so poor as to meet the general test for constitutionally defective assistance. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 85–86 (2009).

"Prejudice" means that "the constitutional errors raised in the petition actually and substantially disadvantaged [a defendant's] defense so that he was denied fundamental fairness." *Murray v. Carrier*, 477 U.S. 478, 494 (1986). A showing of prejudice requires demonstration of a "reasonable probability that . . . the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Vansickel v. White*, 166 F.3d 953, 958–59 (9th Cir. 1999) (quoting *Strickland*, 466 U.S. at 694)).

Also, issues "clearly contemplated by, and subject to, [a] plea agreement waiver" cannot be brought in a § 2255 motion. *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993); *see United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995) (holding that waiver of the right to appeal does not constitute "cause" excusing procedural default on an issue).

## III.  ANALYSIS

### A.  Ground I

Defendant argues that trial counsel was ineffective in requesting the instruction on "deliberate ignorance." The Court rejects this ground. The instruction given was from the Court of Appeals' model instructions and supported by the case law cited therein, and trial counsel was not ineffective in proposing it. (*Compare* Jury Instr. No. 18, ECF No. 63; *with* 9th Cir. Model Crim. Jury Instr. No. 5.7).

Defendant argues that the instruction should not have been given, because the evidence only supported findings of either actual knowledge or no knowledge, not deliberate ignorance. The Court disagrees. The jury's verdict could have been based on a finding that Defendant was deliberately ignorant of the precise identity of the substances and whether they were controlled. That was in fact the main contested issue during closing arguments: deliberate ignorance versus carelessness. The evidence at trial included undercover recordings indicating Defendant's hesitation to speak with the undercover agent about the "spice" or admit he had any for sale. He only reluctantly admitting having it (and then selling it) after the agent's persistence. The evidence of Defendant's hesitation was sufficient for the jury to conclude that Defendant strongly suspected, but did not know for sure, that the substance at issue was controlled. Anyway, the issue of this Court's own alleged error on the point is precluded by the Court of Appeals' affirmance (or procedurally defaulted to the extent the issue was not raised on appeal).

And it was not ineffective for trial counsel to request the deliberate ignorance instruction, because it would have required an acquittal if the jury believed Defendant had merely been careless as to whether the substance was controlled. In a case where the Government's evidence of the *actus reus* was so overwhelming, it was a reasonable tactical decision for trial counsel to ensure the jury had this potential route to acquittal based on Defendant's *mens rea*. That was in fact the primary argument defense counsel made to the jury, specifically arguing several times that Defendant was not guilty if he had been "ignorant or careless" as to the illegality of the substances. In reply, the Government correctly noted that "deliberate" ignorance was no excuse. The instruction was not in error, and counsel was not ineffective for requesting it.

**B.     Ground II**

Defendant also argues that trial counsel was ineffective in failing to object to the instruction on "knowingly." The Court rejects this ground. The instruction given was from the Court of Appeals' model instructions and supported by the case law cited therein, and trial counsel was not ineffective in failing to object to it. (*Compare* Jury Instr. No. 17; *with* 9th Cir. Model Crim. Jury Instr. No. 5.6).

Defendant is correct that the intervening case of *McFadden v. United States*, 135 S. Ct. 2298 (2015) requires "that the defendant knew he was dealing with 'a controlled substance.'" *Id.* at 2302.

> That knowledge requirement can be established in two ways. First, it can be established by evidence that a defendant knew that the substance with which he was dealing is some controlled substance—that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act—regardless of whether he knew the particular identity of the substance. Second, it can be established by evidence that the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue.

*Id.* at 2305. In other words, a defendant must know either the specific identity of the substance (even if he does not know that it is controlled) or he must know that the substance is controlled (even if he does not know exactly what it is). The Court finds that the instructions here were sufficient under *McFadden*. The instructions required variously that Defendant "knew that it was [named analogues] or some other prohibited drug," (Jury Instr. Nos. 22–25), that he "knew that it was some kind of a prohibited drug," (Jury Instr. Nos. 26–28, 30), or that he "knew that [at least one of the substances was] a controlled substance analogue," (Jury Instr. Nos. 29, 31). The requirement to know either the specific identity of the drug or analogue at issue or the fact that the substance (whatever it was) was "prohibited" or a "controlled substance analogue" conveyed to the jury the requirement that the Defendant either knew the identity of the substance or that it was controlled.

### C. Ground III

Defendant makes several arguments under this ground. First, Defendant argues that trial counsel failed to investigate the facts of the case and failed to present an expert to rebut the Government's experts as to the chemical identity of the substances at issue. Except as to UR-144, *see infra*, Defendant does not make any showing as to what facts he believes might have exonerated him if discovered by trial counsel. Nor does he provide any basis to believe that a challenge to the chemical identities of the substances at issue in this case or whether they qualify as analogues would have been successful, again, except as to UR-144. Trial counsel cross examined the DEA's forensic chemist as to her procedures, calibration of the machines, lab cleanliness, etc.

Second, Defendant argues that trial counsel incorrectly informed him by letter of October 18, 2013 that the maximum sentence for each count was 10 years, when in fact it was 20 years.

Even assuming trial counsel wrongly advised Defendant on this point, however, there was no prejudice, because Defendant was sentenced to less than 10 years. Defendant argues that the incorrect advice weighed heavily on his decision to reject the Government's plea offer. To show prejudice based on having rejected a plea offer due to counsel's faulty advice:

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012). Here, Defendant has not even provided any evidence of the terms of the purported plea offer. Because he has adduced no evidence that the Government offered him a plea that with reasonable probability would have resulted in a lesser conviction or sentence, Defendant has not shown that trial counsel's incorrect advice prejudiced him.

Third, Defendant argues that trial counsel failed to call "Kishan" as a witness to support Defendant's theory that he lacked knowledge of the illegality of the substances. Defendant presumably means Ram Kishan, although he does not identify exactly who he means. But at the time of trial, Ram Kishan had himself just been indicted and arraigned on similar charges. Without a showing that Kishan had offered to testify despite his Fifth Amendment right against self-incrimination—which Defendant does not provide—Defendant cannot show that trial counsel was ineffective in failing to call him. Kishan almost certainly would not have agreed to testify as to anything concerning "spice" while facing his own charges related to its possession and distribution.

Fourth, Defendant argues that trial counsel was not sufficiently familiar with federal criminal procedure, as evidenced by the fact he was unaware that the lead Government law enforcement agent would be able to sit at the prosecutor's table during trial. The Court finds that ignorance of this procedural rule did not render trial counsel constitutionally ineffective.

**D.     Ground IV**

Defendant argues that trial counsel failed to call any witnesses, i.e., failed to provide any case-in-chief, and failed to properly cross-examine the Government's witnesses. But Defendant identifies no witnesses who could have aided his defense except for Kishan, and it was not trial counsel's duty to manufacture exculpatory testimony out of nothing. As already noted, Kishan was extremely unlikely to waive his Fifth Amendment privilege not to testify about "spice" and Defendant's knowledge of its illegality while also under indictment on similar charges, and Defendant himself—who now claims to have had unspecified information that would have exonerated him—declined to testify.

Defendant also argues that trial counsel failed to address an internal DEA email by Arthur Berrier to Thomas Duncan indicating that Berrier (of the DEA's Special Testing and Research Laboratory) disagreed with the ODE Analogue Monograph that UR-144 was a chemical analogue of JWH-018. (*See* ECF 125, at 53). "Controlled substance analogue" is defined as:

a substance--

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A)(i), (iii). The Supreme Court has (without directly addressing the issue) listed the three prongs of the definition of "controlled substance analogue" in a way that appears to indicate it reads the three prongs disjunctively. *See McFadden v. United States*, 135 S. Ct. 2298, 2305 (2015); *see also United States v. Granberry*, 916 F.2d 1008, 1010 (5th Cir. 1990) (holding that the statute is unambiguously disjunctive). The Fourth Circuit later read the statute as partially conjunctive, i.e., as requiring both substantial chemical similarity under subsection (32)(A)(i) and either the required effect on the central nervous system or a representation or intent of such an effect under subsections (32)(A)(ii) or (iii). *See United States v. McFadden*, 823 F.3d 217, 220 (4th Cir. 2016); *accord, e.g.*, *United States v. Hodge*, 321 F.3d 429, 433–38 (3rd Cir. 2003) (finding the wording of the statute ambiguous as to conjunctively and consulting the legislative history).

Regardless of whether the three elements of § 802(32)(A) are to be read totally or only partially disjunctively, the Court instructed the jury in this case consistently with the Fourth Circuit's partial-disjunctive reading of the statute. It therefore matters that Berrier disagreed that UR-144 and JWH-018 were substantially similar in chemical structure. The evidence was overwhelming that the "spice" in this case was intended to have the required effect, and there is no reasonable probability that introducing evidence of a disagreement as to the chemical similarity of UR-144 and JWH-018 would have resulted in a different verdict as to that issue. But the instructions required a conjunctive finding of substantial chemical similarity, and the Court cannot at this time say with confidence that the jury would have so found beyond a

reasonable doubt had trial counsel introduced evidence of the internal dispute at the DEA's own laboratory on that issue.

The Court will require the Government to respond to the issue under Ground IV of whether trial counsel was ineffective for failing to introduce evidence of an internal DEA disagreement as to the chemical analogue status of UR-144, as well as to the argument under Ground III, *supra*, that trial counsel should have obtained an expert to bolster the argument.

### E. Ground V

Defendant argues error in certain jury instructions and the verdict form. This ground is rejected. As noted, *supra*, claims of the Court's own error (to the extent not defaulted) have been precluded by the Court of Appeals' affirmance on direct appeal.

### F. Ground VI

Defendant argues that trial counsel was ineffective in failing to file motions to exclude evidence of pipes found at Defendant's home because they "were obtained after the search warrant had concluded" and no exception to the warrant requirement applied. The Court disagrees that this was necessary for the government to prove the "spice" was intended for human consumption. There was ample evidence adduced as to the purpose of the "spice," including the conversations between Defendant and the undercover agent. Nor does Defendant explain what he means by "after the search warrant had concluded."

Defendant also argues that trial counsel failed to object to "unqualified expert testimony by DEA witnesses" or to provide evidence that the pipes were for legitimate uses. It is unclear which testimony Defendant objects to. The Court of Appeals has already affirmed as to the admissibility of Dr. Ghozland's testimony. (Mem. Op. 4–5, ECF No. 118).

Defendant also argues that trial counsel failed to argue that "the sentencing ratio of 1:167 was improper." Presumably, Defendant means to refer to the Drug Equivalency Table of § 2D1.1 of the Guidelines, which indicates that 1 gram of organic or synthetic Tetrahydrocannabinol is equivalent to 167 grams of marijuana for the purposes of the base offense level. But counsel cannot have been ineffective for failing to object to this calculation, because the Guidelines require it. The courts of appeals to consider the issue have ruled that the 1:167 ratio under the Guidelines, no matter how harsh it may seem as a political matter, is not challengeable as improper. *See, e.g.*, *United States v. Hurley*, 842 F.3d 170, 173–74 (1st Cir. 2016). Defendant does not appear to argue that Tetrahydrocannabinol was not the appropriate comparator, and the evidence at trial was overwhelming that it was.

### G. Ground VII

This ground appears redundant with the issue under Grounds III and IV concerning the DEA chemist's disagreement as to the analogue status of UR-144.

### H. Ground VIII

Defendant argues that trial counsel failed to move for the exclusion of evidence of certain prior bad acts under Rule 404(b). Presumably, he is referring to the evidence of the Viagra pills found at his residence. The Court of Appeals has ruled on direct appeal that "the Viagra pills were admissible as probative of Singh-Sidhu's intent to distribute the charged drugs," and that any potential error was harmless. (Mem. Op. 3). Accordingly, there can be no ineffective assistance claim. Anyway, even without reviewing the entire trial transcript, it is clear that trial counsel must have in fact timely objected to the evidence, or the issue would not have been preserved for direct appeal.

///

**I.     Ground IX**

Defendant argues that trial counsel was ineffective in failing to use an interpreter during pretrial meetings and proceedings. But Defendant's understanding of the English language is clear from the present motion, which he has filed without any attorney. Nor does he identify any alleged harm resulting, i.e., any facts that he was unable to communicate to trial counsel that would have aided in his defense.

**J.     Ground X**

This ground appears redundant with the part of Ground III concerning trial counsel's poor understanding of federal trial procedure.

**K.     Ground XI**

Defendant argues trial counsel should have filed a pretrial motion to dismiss based on Defendant's lack of notice as to the illegality of "spice." The Court rejects this ground. Such a motion would have had no reasonable chance of success. *See supra.*

*///*

*///*

*///*

*///*

*///*

*///*

*///*

*///*

*///*

*///*

# CONCLUSION

IT IS HEREBY ORDERED that the Government shall, within twenty-one (21) days, ANSWER the Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 125) as to the issue of trial counsel's failure to introduce evidence of DEA chemists' disagreement over the analogue status of UR-144, failure to cross-examine Dr. Amin as to the issue, and failure to adduce expert testimony on the issue under Grounds III, IV, and VII. The Government may, but is not required to, respond to other issues raised in the motion. Defendant shall have fourteen (14) days to reply.

IT IS FURTHER ORDERED that the Motion for Appointment of Counsel (ECF No. 126) is DENIED.

IT IS SO ORDERED.

DATED: This 13th day of April, 2017.

_____
ROBERT C. JONES
United States District Judge